UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | | |
|---|---|---|
| CANDY ODOM | ) | |
| | ) | |
| v. | ) | NO. 2:05-CV-326 |
| | ) | NO. 2:03-CR-74 |
| UNITED STATES OF AMERICA | ) | Judge Greer |
| | ) | |

**MEMORANDUM OPINION**

Candy Odom ("petitioner" or "Odom"), a federal prisoner, has filed this "Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence . . ." [Doc. 414]. The United States has responded in opposition [Doc. 446] and the matter is now ripe for disposition.[1] The Court has determined that the motion and the record of prior proceedings in the case conclusively establish that the petitioner is not entitled to relief under § 2255 and, therefore, no evidentiary hearing is necessary. For the reasons which follow, the petitioner's § 2255 motion lacks merit, and the motion will be denied.

**I.     Procedural and Factual Background**

Odom was one of 14 defendants indicted by the federal grand jury on September 23, 2003, in a 204 count indictment. Odom was charged only in Counts 2 and 204 of

---

[1] Odom also has a pending motion for reduction of sentence pursuant to 18 U.S.C. § 3582. That motion will be the subject of a separate order.

the indictment. Pursuant to a negotiated plea agreement, she pled guilty to Count 2 of the indictment, *i.e.* conspiracy to distribute and possess with the intent to distribute 50 grams or more of crack cocaine, on January 26, 2004. A Presentence Report ("PSR") was ordered. Based upon a total offense level of 35 and a criminal history category of II, petitioner's guideline range was 168 to 210 months of imprisonment. Petitioner was subject to a statutory minimum mandatory sentence of ten years up to a maximum sentence of life imprisonment pursuant to 21 U.S.C. § 841(b)(1)(A).

The United States moved for a downward departure based upon petitioner's substantial assistance. The government's motion was granted and the petitioner was sentenced on December 13, 2004, to a term of imprisonment of 132 months. Judgment was entered in the case on January 7, 2005. No direct appeal was filed and the judgment became final. On December 9, 2005, petitioner timely filed the instant motion.

At the time of the entry of petitioner's guilty plea, certain facts were stipulated by petitioner in connection with her plea:

> Through the testimony of several witnesses, to include coconspirators, the government would demonstrate, beyond a reasonable doubt, that from approximately the month of January 2000, and continuing to on or about September 23, 2003, the defendant did knowingly, intentionally, and without authority conspire with at least one other person to

distribute and possess with the intent to distribute 2,721 grams of a mixture or substance containing a detectible amount of cocaine base (crack), a Schedule II controlled substance.

During an interview with law enforcement agents on November 10, 2003, defendant Odom admitted to obtaining and distributing 2.7 kilograms of cocaine base (crack) during the course of the conspiracy. Specifically, defendant Odom admitted the following activity during the period of the conspiracy:

1. For a 30-day period, defendant Odom purchased an 8-ball of crack cocaine per day from an unindicted coconspirator.

2. For a five-month period, defendant Odom purchased an average of 3-5 grams per day from a coconspirator.

3. For a one or two-month period, defendant Odom purchases an 8-ball of cocaine three times per week from an unindicted oconspirator.

4. When a coconspirator was arrested and sent to North Carolina, defendant Odom and another individual took ten ounces of crack cocaine to North Carolina for him. Defendant Odom distributed a kilogram of cocaine for this same coconspirator during the course of the conspiracy.

5. When another coconspirator was arrested, defendant Odom was "holding ½ ounce of crack cocaine for him."

In addition to the admitted conduct, defendant Odom distributed six grams of crack cocaine to a confidential

informant in a recorded and surveilled transaction.

The PSR also set out certain additional facts which were not included in the stipulation of facts and which were unobjected to by the defendant at the sentencing hearing:

> According to Special Agent Ranier Drolshagen of the Federal Bureau of Investigation, agents became aware of the members of the conspiracy in early 2000. Through the use of informants and confidential sources, it was determined that codefendants Garret Johnson, Gary McCrae, and Darryl McCrae, were obtaining cocaine base (crack) from North Carolina, and selling the drug to various distributors in the Johnson City area. These three individuals are charged with operating a continuing criminal enterprise. Agent Drolshagen verified that coconspirators had independently provided information that defendant Odom distributed over a kilogram of cocaine base (crack) for one codefendant, and regularly obtained three to five grams daily over a six-month period. Defendant Odom also served as a distributor for Gary McCrae, and began her involvement in the conspiracy in March of 2001. Based upon this information, the defendant will be held accountable for a minimum of 2.7 kilograms of cocaine base (crack).

## II.    Standard of Review

This Court must vacate and set aside petitioner's conviction upon a finding that "the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such

a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, . . . ." 28 U.S.C. § 2255(b). Under Rule 8(a) of the Rules Governing Section 2255 Proceedings In The United States District Courts, the Court is to review the answer, any transcripts, and records of prior proceedings and any material submitted under Rule 7 to determine whether an evidentiary hearing is warranted.

When a defendant files a § 2255 motion, she must set forth facts which entitle her to relief. *Green v. Wingo*, 454 F.2d 52, 53 (6th Cir. 1972); *O'Malley v. United States,* 285 F.2d 733, 735 (6th Cir. 1961). "Conclusions, not substantiated by allegations of fact with some probability of verity, are not sufficient to warrant a hearing." *Green*, 454 F.2d at 53; *O'Malley*, 285 F.2d at 735 (citations omitted). A motion that merely states general conclusions of law without substantiating allegations with facts is without legal merit. *Loum v. Underwood*, 262 F.2d 866, 867 (6th Cir. 1959); *United States v. Johnson*, 940 F. Supp. 167, 171 (W.D. Tenn. 1996).

To warrant relief under 28 U.S.C. § 2255 because of constitutional error, the error must be one of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (citation omitted) (§ 2254 case); *Clemmons v. Sowders*, 34 F. 3d 352, 354 (6th

Cir. 1994); *see also United States v. Cappas*, 29 F.3d 1187, 1193 (7th Cir. 1994) (applying *Brecht* to a § 2255 motion). To warrant relief for a nonconstitutional error requires a showing of a fundamental defect in the proceedings that resulted in a complete miscarriage of justice or an egregious error inconsistent with the rudimentary demands of fair procedure. *Reed v. Farley,* 512 U.S. 339 (1994); *Grant v. United States*, 72 F. 3d 503, 506 (6th Cir. 1996), *cert. denied*, 517 U.S. 1200 (1996).

### III.  Analysis and Discussion

In her § 2255 motion, Odom raises numerous claims, including claims of ineffective assistance of counsel. She argues that: (1) she received ineffective assistance of counsel at both the plea and sentencing phase of the proceedings in that (i) defense counsel told her to agree to an amount of drugs (2,721 grams) which was incorrect and assured her that it could be changed later, and (ii) defense counsel lead her to believe she would receive a 50 percent reduction in sentence for her cooperation with the government in the case; (2) because of her belief that she would receive no more than five years of imprisonment, Odom did not knowingly, intelligently and voluntarily enter into her plea agreement; and (3) she was sentenced under a mandatory guidelines scheme based on facts not found by a jury in violation of her Fifth and Sixth Amendment rights.

1. **Ineffective Assistance of Counsel at Plea and Sentencing Phase of the Proceedings**

In *Strickland v. Washington,* 466 U.S. 668(1984), the Supreme Court established the criteria for determining whether a Sixth Amendment claim of ineffective assistance of counsel is meritorious. The *Strickland* test requires that a defendant demonstrate two essential elements; (1) counsel's performance was deficient, *i.e.,* counsel was not functioning as counsel guaranteed the defendant by the Sixth Amendment, and (2) counsel's deficient performance prejudiced the defendant, *i.e.,* deprived the defendant of a fair trial rendering the outcome of the trial unreliable. *Id.* at 687-88.

There is a strong presumption that counsel's conduct was within the wide range of reasonable professional assistance and that conduct cannot be viewed in hindsight, but must be evaluated for reasonableness within the context of the circumstances at the time of the alleged errors. *Id.* at 689-90. A defendant's challenge to such decisions must overcome a presumption that the challenged actions might be considered sound trial strategy. *McQueen v. Scroggy,* 99 F.3d 1302, 1311(6th Cir. 1996); *O'Hara v. Wigginton*, 24 F.3d 823, 828(6th Cir. 1994).

When a defendant challenges his guilty plea, to establish the prejudice prong, he must demonstrate that without counsel's alleged errors, he would not have pled guilty, but would have insisted on standing trial. *Hill v. Lockhart*, 474 U.S. 52, 56,59(1985).

To demonstrate a reasonable probability that he would have gone to trial, a defendant is required to present evidence apart from a bare assertion that but for counsel's error he would have pleaded not guilty and gone to trial. *See Parry v. Rosemeyer*, 64 F.3d 110, 118(3rd Cir. 1995). "[R]eviewing court[s] must remember that 'counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.' " *Wong v. Money*, 142 F.3d 313, 319(6th Cir. 1998), *quoting Strickland*, 466 U.S. at 690. "An error of counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the [ultimate] judgment." *Id*. at 691.

    **a. Erroneous Agreed Factual Basis**

Odom claims that she informed her counsel that the amount of drugs stated in the agreed factual basis (2,721 grams) and relied upon by the probation officer in the calculation of her offense level was incorrect but that defense counsel told "her to sign the PSI/PSR and he would get it changed later." She claims that defense counsel was ineffective in failing to challenge the drug quantity used for calculation of her offense level in the PSR.

As an initial matter, petitioner appears to have procedurally defaulted this claim. A petitioner is procedurally barred from raising claims in a § 2255 motion, even those of constitutional magnitude, to which no contemporaneous objection was made or

8

which were not presented on direct appeal. *U.S. v. Frady*, 456 U.S.152, 167-68 (1982); *Nagi v. United States*, 90 F.3d 130, 134 (6th Cir. 1996). Where a petitioner has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in a motion under § 2255 only if the defendant first demonstrates either cause for the default and actual prejudice or that she is actually innocent. *Bousley v. United States*, 523 U.S. 614, 622 (1998). The petitioner here makes no claim of actual innocence, only that she should be entitled to resentencing based on a different drug amount.

A claim of ineffective assistance of counsel may serve as cause excusing a procedural default. *See Elzy v. United States*, 205 F.3d 882, 884 (6th Cir. 2000). The procedural default rule does not apply to claims of ineffective assistance of counsel because such claims generally are not reviewable on direct appeal, as the record may be inadequate to review. *United States v. Kincaide*, 145 F.3d 771, 785 (6th Cir. 1998). "Section 2255 is not a substitute for a direct appeal, and thus a defendant cannot use it to circumvent the direct appeal process." *Regalado v. United States*, 334 F.3d 520, 527-28 (6th Cir. 2003), *citing Frady* at 167-68. Furthermore, "the *Frady* cause and prejudice standard applies to a defendant who pleads guilty and first asserts a claim for relief in a collateral proceeding." *Ratliff v. United States*, 999 F.2d 1023, 1025 (6th Cir. 1993).

9

Odom does not address cause for her failure to pursue a direct appeal in this case and no reason is apparent from the record. Nevertheless, the Court will consider her claim on the merits.

At the time of Odom's guilty plea in this case, she signed and filed with the Court an agreed factual basis containing a stipulation of facts agreed to with the government. Not only did she sign the agreed factual basis, she stated to this Court under oath at the time of the entry of her plea that everything contained in the agreed factual basis was in fact true. Not only that, she was asked during the Rule 11 colloquy how she pleaded to Count 2 of the indictment and the Court specifically stated the charge as "a conspiracy to distribute and to possess with the intent to distribute 2.7 kilograms of crack cocaine." Her plea was an unequivocal one of "guilty" and she furthermore informed the Court, again under oath, that she was offering to plead guilty to that offense because she was in fact guilty. She now argues that she should not have been held accountable for that quantity of crack cocaine and that her attorney was fully aware of her disagreement with the quantity but nevertheless urged her to sign the agreed factual basis and, apparently, to lie to this Court under oath. At no time during the change of plea hearing did Odom ever express any disagreement with the quantity stated in the agreed factual basis but rather she affirmatively agreed with it.

In addition, as set forth above, petitioner must plead sufficient facts in her § 2255

motion to entitle her to relief. The petitioner has not done so here but relies on conclusory allegations not supported with sufficient facts. She argues in a conclusory fashion that she is responsible for a lesser quantity of crack cocaine than that set forth in the PSR; however, she never makes any allegation about the quantity for which she now claims responsibility nor does she show how such quantity would have affected her guideline range. The Court notes that petitioner's base offense level was level 36 for a quantity of crack cocaine of at least 1.5 kilograms but less than 4.5 kilograms. Petitioner makes no attempt to show that the quantity for which she now claims responsibility would have been less than 1.5 kilograms and, if not, her base offense level would not have been affected by the calculation. In fact, not only does the agreed factual basis contain a stipulation of the total quantity for which Odom was being held responsible, *i.e.* 2,721 grams, it also contains specific admitted conduct for which the quantities exceed 1.5 kilograms.

Odom's decision to lie under oath to the District Court cannot amount to prejudice. *See Warner v. United States*, 975 F.2d 1207 (6th Cir. 1992) "Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Blackledge v. Allison*, 431 U.S. 63,74 (1977). This Court scrupulously followed the

requirements of Fed. R. Crim. P. 11 at the change of plea hearing and conducted a proper, clear, and thorough plea colloquy. A trial court's "thorough examination at the hearing, taking careful and appropriate measures to dispel any confusion on on [the defendant's] part before the plea was accepted," cured any claim that the defendant was prejudiced by erroneous "advice from [the defendant's] trial attorney [that allegedly] led to her misunderstanding the consequences of her guilty plea." *Barker v. United States*, 7 F.3d 629, 633 (7th Cir. 1993), *cert. denied*, 510 U.S. 1099 (1994). Likewise, where the court follows the requirements of Rule 11, "the defendant is bound by [her] statements in response to the court's inquiry." *Baker v. United States*, 781 F.2d 85, 90 (6th Cir. 1986). Thus, to the extent Odom suggests that she answered the Court's questions falsely, her decision to lie cannot amount to prejudice under *Strickland*.

### b. Counsel's Representations as to Sentence

Odom also alleges that she was led to believe by defense counsel that "she would receive a 50 percent reduction for her cooperation in this case." She alleges that defense counsel mislead her and lied to her about the plea agreement, leading her to believe that she would receive a five year sentence for her limited involvement in the offense.

As an initial matter, Odom has offered no facts to support her allegation that such an assurance was given and has offered no affidavit, not even her own, to that effect.

Moreover, the record in this case contradicts Odom's assertion and establishes quite clearly that no assurance was in fact given by defense counsel. In her written plea agreement, Odom acknowledged that the Court could "impose any lawful term of imprisonment up to the statutory maximum" and that the maximum penalty to which she would be exposed was a term of life imprisonment. Plea Agreement, ¶¶ 1(a),(2). She further acknowledged in her plea agreement that the District Court would determine the appropriate sentence and that "this determination will be based upon the entire scope of the defendant's criminal conduct, criminal history, and pursuant to other factors and guidelines set forth in the Sentencing Guidelines." She also acknowledged that her attorney had "fully explained the nature of the charges, the potential penalties, and any defenses that she might have." *Id.*, ¶ 11. The plea agreement further provided that the "[p]lea Agreement constitutes the full and complete agreement and understanding between the parties concerning the defendant's guilty plea to the above–referenced charge(s), and there are no other agreements, promises, undertakings, or understandings between the defendant and the United States." *Id.*, ¶ 20.

During the plea colloquy, Odom acknowledged under oath that she fully understood all the terms and conditions of her plea agreement, that she understood the required mandatory minimum term of imprisonment as well as the maximum statutory penalty, that she understood that the sentence for her case could not be determined until

a PSR was prepared, and that she understood that the Court had the authority to impose a sentence more severe than the sentence called for in the guidelines.

Furthermore, an exchange between the Court, defense counsel and the petitioner during the change of plea hearing illustrates that defense counsel had not made any assurances to Odom with respect to a specific sentence. During the change of plea hearing, the Court specifically asked defense counsel whether he had "made any recommendations[sic] to the defendant as to what sentence [the Court] might impose in this case other than to give her an estimate of her guideline sentencing range." Defense counsel indicated that he had advised Odom that the guidelines would apply based upon her prior criminal history and her cooperation and her acceptance of responsibility and that they had only a "rough idea of what might happen." Petitioner was then questioned directly by the Court about her understanding that whatever her attorney had told her about her sentence was simply an estimate of what her guideline sentence might be and she affirmatively acknowledged that she understood that it would be up to the Court to determine what the sentence would be. Petitioner never, at any time prior to the filing of her § 2255 motion, disputed her attorney's statements made in her presence, she never sought to withdraw her plea of guilty and she never expressed any dissatisfaction with her attorney, even during her allocution at sentencing. This

clearly indicates to this Court that Odom's assertion that it was represented to her that she would receive a five year sentence is simply not credible and is, in fact, contradicted by the record.

As noted above, a review of the transcript of the plea colloquy establishes that this Court scrupulously followed the requirements of Fed. R. Crim. P. 11 and conducted a proper, clear, and thorough plea colloquy. Odom is now bound by her statements in response to the Court's inquiry and, to the extent Odom suggests that she answer the Court's questions falsely, her decision to lie cannot amount to prejudice under the *Strickland* test. Accordingly, this issue lacks any merit.

2. **Voluntariness of the Guilty Plea**

Odom next argues that she did not knowingly, intelligently and voluntarily enter into her plea agreement because she was falsely promised that she would receive a sentence of no more than five years in exchange for her cooperation and timely plea of guilty. This argument lacks merit for the reasons set forth in Section 1 above. A review of the transcript of the change of plea hearing establishes that this Court complied precisely with the requirements of Fed. R. Crim. P. 11 and that the guilty plea was knowingly, intelligently and voluntarily entered.

3. **Judicial Factfinding**

Odom argues that her Fifth and Sixth Amendment rights were violated in that

she was sentenced based upon a drug quantity of 2,721 grams of crack cocaine, an amount which was not charged specifically in the indictment. Citing both *Apprendi v. New Jersey*, 530 U.S. 466 (2000) and *United States v. Booker*, 543 U.S. 220 (2005), Odom argues that she was sentenced "under the pre–*Booker*, mandatory Guidelines scheme" and that the district court improperly "enhanced her sentence based on facts not found by a jury." She argues that the proper remedy is for this Court to "determine whether it would have imposed a different sentence, materially more favorable to Odom, had it been fully aware that the United States Sentencing Guidelines were advisory, not mandatory." This issue lacks merit for several reasons.

As an initial matter, *Apprendi* had been decided well before the petitioner's judgment became final and she has procedurally defaulted any argument based on *Apprendi*. Furthermore, it is clearly established that *Booker* does not apply retroactively to cases on collateral review. *Valentine v. United States*, 488 F.3d 325, 331 (6th Cir. 2007); *Humphress v. United States*, 398 F.3d 855, 858 (6th Cir. 2005). In any event, there was no judicial fact finding in this case. The quantity of drugs used to calculate the guideline range was the amount admitted to by the petitioner in the agreed factual basis filed with the Court. Even if her guideline range had been based on judge found facts, the Sixth Circuit has "repeatedly held since *Booker* that district judges can find the facts necessary to calculate the appropriate guidelines range using the same

preponderance-of-the-evidence standard that governed prior to *Booker*." *United States v. Ferguson*, 456 F.3d 660, 665 (6th Cir. 2005).

## IV. Conclusion

For the reasons set forth above, the Court holds petitioner's conviction and sentencing were not in violation of the Constitution or laws of the United States. Accordingly, her motion to vacate, set aside or correct her sentence pursuant to 28 U.S.C. § 2255 will be **DENIED** and her petition **DISMISSED**.

Under 28 U.S.C. § 2253(c)(2), the Court must decide whether a certificate of appealability should be granted. A certificate should issue if petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit Court of Appeals disapproves of the issuance of blanket denials of a certificates of appealability. *Murphy v. Ohio*, 263 F. 3d 466 (6th Cir. 2001). The District Court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id*. at 467. Each issue must be considered under the standard set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473, (2000). *Id.*

Under *Slack*, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Having examined each of the petitioner's

claims under the *Slack* standard, the Court finds that reasonable jurists could not find that this Court's dismissal of petitioner's claims was debatable or wrong. Therefore, the Court will deny petitioner a certificate of appealability as to each issue raised by her.

A separate order will enter.

ENTER:

s/J. RONNIE GREER  
UNITED STATES DISTRICT JUDGE